## BRINCKERHOOF and others *vs*. REMSEN & BRINCKERHOOF.

Where the instrument propounded as a will was wholly in the hand writing of a third person, and was executed by the decedent merely by signing it and acknowledging it to be her hand and seal in the presence of the subscribing witnesses, and the instrument was not read, nor was any thing said at the time from which the witnesses understood it to be a will; *Held*, that it was not duly executed and published by the testatrix, so as to make it a valid will, under the provisions of the revised statutes ; although the attestation clause, which was not read by or in the hearing of the witnesses, stated the will to have been duly published in the presence of such witnesses.

The revised statutes having provided, that the testator, at the time of signing or acknowledging his will in the presence of each of the witnesses thereto, shall declare the instrument so subscribed to be his last will and testament, there must be an actual publication of the instrument, as a will, in the presence of the subscribing witnesses; in addition to the other formalities required by the statute.

No particular form of words is necessary to be used by the testator in declaring the instrument signed by him to be his will, if he actually communicates to the attesting witnesses the information, that he knows and understands the nature of the instrument he is executing, and intends distinctly to recognize it as his will.

But to render a will valid, under the provisions of the revised statutes, the

subscribing witnesses thereto must, at the time of its execution, know it to be a will; and must also know that the testator understands it to be and means to execute it as a will.

Where the attestation clause is in the usual form, stating the will to have been executed and published by the testator as his last will and testament, in the presence of the witnesses, specifying that all the requisite formalities were complied with, if such attestation clause is read over in the presence and hearing of the testator and the witnesses and understood by him and them, a request from the testator that they will subscribe the same as witnesses to his execution thereof, will of itself be a sufficient publication of the instrument as his last will and testament.

And where the subscribing witnesses to a will have subscribed their names as witnesses at the end of an attestation clause, showing that all the formalities requisite to a valid execution of the will were complied with, the mere inability of the witnesses to recollect that the testator published the instrument as his will, is not sufficient to invalidate the same, unless the witnesses recollect that he did not declare it to be his will, and that the attestation clause was not read and understood at the time of the execution of the instrument.

So in the case of the death of the subscribing witnesses to a will, their signatures, at the end of an attestation clause stating, in the usual form, that all the formalities required by law were complied with, would, when duly proved, be sufficient evidence that the will was executed and published by the testator in due form.

THIS was an appeal to the chancellor from the decision October 6. and decree of the circuit judge of the first circuit, affirming a sentence or decree of the surrogate of the city and county of New-York, admitting the will, or instrument propounded by the respondents as the last will and testament of Dorothea Brinckerhoof deceased, to probate as a valid will. The instrument propounded purported to have been executed by the testatrix in February, 1834, and was witnessed by H. Clark and B. W. Murphy, by subscribing their names, with the addition of their places of residence at the foot of an attestation clause at the end of the will. The attestation clause was as follows : " The writing contained on this one sheet of paper was on the day of the date thereof subscribed at the end thereof and sealed, by the above named Dorothea Brinckerhoof, in the presence of each of us ; and she at the same time acknowledged to each of us that she subscribed the said writing *and declared it to be her last will and testament.* And at her request we have

hereunto respectively subscribed our names as witnesses in her presence, and in the presence of each other ; and we have each of us written opposite to our names, our respective places of residence."

The testatrix, at the date of the will, was in her eighty-fifth year. And the will was wholly in the hand writing of her daughter, Jane Brinckerhoof, one of the executrixes ; except the signature of the testatrix, and the names of the witnesses and their places of residence. The proof of the execution was in substance as follows : H. Clark testified that he was a clerk in the store of Mr. Shermerhorn, the son in law of the testatrix, and attended at his request as a witness ; that the testatrix executed the instrument propounded as a will, in his presence, by writing her name and acknowledging it " to be her hand and seal for the purposes therein mentioned ;" that the will was not read to her, nor did the witness read it, except the last line of the attestation clause ; that he subscribed his name to the instrument as a witness, in the presence of the testatrix ; but he did not ask her if it was her will, nor did she say it was ; nor did any person who was present say it was a will. B. W. Murphy, the other subscribing witness, testified that H. Clark requested him to go with him to witness an instrument, and was present with him at the execution of the instrument propounded, and subscribed it as a witness, at the request of the testatrix ; that he saw her sign it, and she acknowledged it to be her signature, for the uses and purposes therein mentioned ; that she did not say it was her will, nor did he understand from any one present that it was a will ; that there were two other ladies present, but he never saw the testatrix or either of those ladies before ; that after he had written his name as a subscribing witness, the testatrix discovered that he had omitted to write his place of residence, and requested that it should be done.

*S. Stevens & G. Brinckerhoff*, for the appellants.

*G. Griffin & D. Lord, jun.* for the respondents.

THE CHANCELLOR. This case presents a new and very important question in relation to the execution and proof of wills under the provisions of the revised statutes. Our former statute on this subject was in substance the same as the 29 *Charles 2d, chap.* 3, § 5. It declared that every will of lands should be in writing and signed by the party making the same, or by some other person in his presence and by his express direction ; and should be attested and subscribed, in the presence of such party, by three or more credible witnesses. (1 *R. L. of* 1813, *p.* 364, § 2.) As the statute of Charles contained no express provision upon the subject of the publication of the will by the testator, the question arose under that statute, whether it was necessary that there should be any publication of the will in the presence of the subscribing witnesses, or whether it was not sufficient if it appeared from other evidence that the instrument, signed by the testator and the witnesses as directed by the statute, was intended by the testator as a will. This question does not appear to have been definitively settled, in England, in 1826, when the 3d edition of Mr. Roberts' valuable treatise on the law of wills was published. After referring to some of the cases on the subject, that author says, " the point therefore, seems subject to some doubt whether *publication* is to be considered as a mere vague term, expressing generally the act of authenticating and announcing the veritable will of a testator, but depending as to the mode by which it is to be effectuated on the particular ceremonies and solemnities prescribed by the legislature, or as implying a specific obligation on the testator, *beyond* the execution and attestation of the will according to the statute of frauds." (1 *Rob. on Wills,* 3*d Lond. ed.* 101.) His opinion evidently was, that under the statute of Charles 2d, no positive declaration of the testator, in the presence of the witnesses, that it was his will, was requisite in order to make it valid. He says, however, if any such positive declaration be necessary to constitute a sufficient publication, since that statute, " it does not seem that the mere acknowledgment of the signing can operate as an equiva-

1840.

Brinckerhoof
v.
Remsen.

1840.

Brinckerhoof
v.
Remsen.

lent; for the *acknowledgment* of the signing, unless the testator at the same time acknowledge his will, can not be more extensive in effect than the *act* of signing in the presence of the witnesses." (*Idem*, 102.)

The first reported case which has a bearing on this question, is that of *Peate v. Ougley*, in 1710, (*Comyn's Rep.* 197,) upon the will, or rather upon the question of the due execution of a codicil to the will, of the Earl of Bolingbroke ; which codicil was executed in 1679, the next year after the passing of the statute 29 Charles 2d. The will itself was dated about ten years previous, and was signed and sealed by the testator. The codicil was written immemediately below, and was also signed and sealed by him, and covered the whole of that part of the paper ; so that there was not room to add the attestation clause and the names of the witnesses, below the testator's signature to the codicil. But at the top of the will there was an attestation clause in the following words, to which the names of the three witnesses were subscribed subsequently to the date of the codicil : " signed, sealed, and published as my last will and testament in the presence of ; *the same being written here for want of room below.*" Upon the trial of the cause before Trevor, C. J. the only surviving witness identified the instrument as the one he and the other subscribing witnesses had signed, at the request of the testator ; and he proved that the will and codicil and the attestation clause were all in the deceased earl's hand writing. He also swore that he and the other two witnesses were called up in the night, and sent for into the testator's room, who produced a paper folded up, and requested them to set their hands to it as witnesses ; which they did in his presence. But they did not see any of the writing, nor did he tell them it was his will, or say what it was. It was, among other things, objected, by the counsel for the defendant, that the codicil was not duly executed according to the statute, as the testator did not declare it to be his will, in the presence of the witnesses. His lordship, however, instructed the jury that there was sufficient evidence to authorize them to find the codicil duly executed ; and they found accordingly.

1840.

Brinckerhoof
v.
Remsen.

It will be seen by the statement of the case of *Peate* v. *Ougley*, that no question could arise as to the knowledge of the testator that the instruments, to which he had subscribed his name, were a will and codicil, and that he intended them to operate as such ; as the whole had been drawn by himself, and the instruments on their face clearly showed that they were intended as testamentary papers only. The point of the decision, therefore, merely was that it was not necessary, to constitute a valid execution of the will within the statute, that the subscribing witnesses should know, from any act or declaration of the testator at the time they were called as witnesses, that the instrument which he was executing was intended as a will, or that he was aware of its contents ; but that those facts might be established by other evidence.

In the case of *Ross* v. *Ewer*, in 1744, (3 *Atk.Rep.* 161,) Lord Hardwick expressed the opinion that the publication was an essential part of the execution of a will ; and that the mere declaration of the testator in the instrument itself that it was his will, was not a sufficient publication. And he referred to Mr. *Windham's* case, upon a trial at bar in the court of king's bench, where he said it was held that a publication was necessary, although the testator executed it in the presence of three witnesses, who attested it in his presence. The particular circumstances of that case are not stated. Nor does it appear whether the instrument given in evidence in Windham's case was in the testator's hand writing, or was ever read by him ; to show that he knew at the time he signed it what its contents were, or that he intended it as a will at the time he so signed it. In that respect it was somewhat analogous to the case now under consideration ; except so far as the fact that the testatrix, in this case, directed one of the witnesses to add his place of residence to his signature, may be considered as evidence that she knew it was a will which she was executing. The case in which the remark of Lord Hardwick was made, did not call for the expression of an opinion upon the question, whether the publication of a will must

be made by the testator *in the presence and hearing of the witnesses who attested the instrument,* under the statute of Charles 2d. For he was speaking in reference to a paper found in the closet of the decedent, immediately after she died, but which was neither in the ordinary form of a will, nor signed by her or any one else ; though it was proved to be in her hand writing, and was headed thus : " I declare this my will." That his lordship did not, in that case, intend to decide that the publication of a will, in order to make it valid under the statute, must be actually made to the subscribing witnesses to such will, is evident, however, from the fact that in 1751, in another case, he cited with approbation, the case of *Trimmer* v. *Jackson*, which he said was decided in the court of king's bench, the year before, upon a case sent there by the court of chancery ; where he then presided as lord chancellor. (*See Rigden* v. *Vallier*, 3 *Atk.* 735, *and* 2 *Ves. sen.* 258.)

Although there is no regular report of this case of *Trimmer* v. *Jackson*, the case itself was subsequently recognized by Mr. Justice Denison ; who must have been a judge of the court of king's bench at the time it was said to have been decided. For he was appointed in 1741, and remained in that court twenty-three years. (*See Gent. Mag. for* 1742, *p.* 274 ; *Burr. Set. Ca.* 177, 531.) It is thus stated by Dr. Burn, in his very valuable treatise on the Ecclesiastical law of England : " The case of *Trimmer* v. *Jackson* was where the witnesses were deceived by the testator at the time of the execution, and were led to believe, from the words used by the testator at the execution of the instrument, that it was a deed and not a will. It was delivered as his act and deed ; and the words *sealed and delivered* were put above the place where the witnesses were to subscribe their names. And it was adjudged by the court, as it is said, for the inconveniences that might arise in families from having it known that a person had made his will, that this was a sufficient execution. (4 *Burn's Eccl. Law*, 8 *Lond. ed. by Tyrwhitt*, 130.) Whether the will was in the hand writing of the testator, or

1840.

Brinckerhoof
v.
Remsen.

there was any evidence of his having recognized it as his will at any other time, does not appear. But the case is a direct authority to the point that it was not necessary, under the statute of Charles 2d, that there should be any distinct recognition by the testator, *in the presence of the subscribing witnesses*, that the instrument executed by him, and subscribed by them, was intended to have a testamentary character ; or that those witnesses should know or suppose it to be a will.

The case of *Wallis* v. *Wallis*, tried before Mr. Justice Deniston in 1762, (4 *Burn's Eccl. Law*, 127,) although but a nisi prius decision, was fully argued at the assizes ; and is an authority to the point that a publication in the presence of the subscribing witnesses was not necessary. It, however, distinctly appeared in that case, from the will itself, that the testator knew the instrument, executed by him in their presence and subscribed by them, was a will. For it was in his own hand writing, and contained the usual attestation clause, purporting that the instrument was signed, sealed, and published as his last will and testament, in the presence of, &c. And the testator himself pointed out to the witnesses the place where they were to write their names ; which names were afterwards found to be written at the end of this attestation clause.

The more recent case of *White* v. *The Trustees of the British Museum*, which came before the court of common pleas in 1829, (6 *Bing. Rep.* 310,) was substantially the same as that of *Wallis* v. *Wallis*, and was decided in the same way, upon the point now under consideration ; although other questions arose in that case. It was found by the special verdict that the attestation clause " In the presence of us, witnesses thereto," was in the hand writing of the testator himself ; who told one of the subscribing witnesses, at the time he requested him to attest it, that it was his will. But the jury found that the other witnesses, who signed it at a different time, at the request of the testator, were not informed by him when they so signed it as witnesses, or at any other time, that it was his will. The

fact that the testator himself knew the nature of the instrument he executed, and intended it for his will, was, therefore, fully established; although that fact was not made known to two of the subscribing witnesses.

The case of *Wright* v. *Wright*, (5 *Moore & Payne's Rep.* 316,) which came before the same court the following year, upon an issue out of chancery, upon a similar state of facts, was decided the same way. And a similar decision was made in the case of *Ray and others* v. *Walton*, in 1819, in the court of appeals of our sister state of Kentucky. (2 *A. K. Marsh. Rep.* 71.) One of the witnesses in that case, however, testified that after the testator had signed the instrument, he requested the witnesses to attest it; accompanying such request with the remark that he believed the law required that a will should be attested by three witnesses. Upon that ground the court held that if an express publication was required, it was sufficiently proved by the testimony of that witness; although the two other subscribing witnesses had no recollection of this remark made by the testator. But Judge Rowan, who delivered the opinion of the court, further held, that the publication of his will by the testator, about which there was much confusion in the British opinions, was to be found in and declared from his observance of those forms and solemnities required by the statute; that every solemnity required by the statute, implied publicity, and the concurrence of them all conferred and completed the requisite publication; that when a man wrote and signed his will with his own hand, he thereby published it; and that the will of Gen. Walton, being written and subscribed wholly by himself, must have been considered by the court as duly published, independent of the other facts in the case.

In none of these cases has the court gone so far as to say that a will was valid where it was not written by the testator himself, and was not published as a will at the time of the execution thereof; unless there was some other evidence, beyond the mere signing of the instrument in the presence of the witnesses, and requesting them to attest it,

to show that the testator knew the instrument so signed by him to be a will, and that he intended it as such ; or that he knew the contents thereof. Indeed, the decision of the supreme court of Massachusetts in *Sweet* v. *Boardman*, (1 *Mass. Rep.* 258,) is a direct authority to show that the mere signing of such a will in the presence of witnesses, and requesting them to attest the execution of the instrument, without letting them know that the testator himself was aware of the character of the paper he thus executed, is not of itself a sufficient publication of the will.

This question is put at rest in England, as to all future wills, by the act of the 3d of July, 1837. ( 1 *Vict. ch.* 26.) The ninth section of that act declares, that no will shall be valid unless it is in writing and executed in the manner therein mentioned ; that is to say, " it shall be signed at the foot or end thereof by the testator, or by some other person in his presence and by his direction ; and such signature shall be made or acknowledged by the testator, in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." And the 13th section of the act declares that every will thus executed shall be valid without any other publication thereof. (*See Supp. to Rob. on Wills*, 37, 112, 113.)

The legislature of this state, however, in the recent revision of the laws, appears to have intended to put the question at rest directly the other way. The former statutes of wills, it will be recollected, prescribed certain formalities to be observed in relation to wills of real estate ; but said nothing as to the publication of the will, by the testator, in the presence of the witnesses, or otherwise. The question, therefore, arose whether the adoption of the formalities required by the statute dispensed with the necessity of the publication of the will, which was necessary previous to the statute ; and if not, whether it was necessary that such publication should be made by the testator in the presence of the three witnesses who attested the will. The

recent English statute dispenses with the publication alto-
gether ; except so far as a compliance with the express
directions of the statute is in itself a publication.    Our re-
vised statutes, on the contrary, after requiring the subscrip-
tion of the testator to the will to be made by him in the pre-
sence of each of the attesting witnesses, or to be acknowl-
edged by him to each witness to have been so made, provides
in express terms, that the testator at the time of making such
subscription, or at the time of acknowledging the same,
shall declare the instrument so subscribed *to be his last will
and testament*. (2 *R. S.* 63, § 40, *sub.* 3.)

When we look at the explicit language of this provision,
in reference to the doubts which once existed whether
under the statute of Charles 2d an actual publication in
the presence of the attesting witnesses was not necessary
to the due execution of the will, in connection with the
fact that the legislature intentionally altered the language
of this section from that of the old statute, which was re-
tained substantially in the section as originally reported by
the revisors, I cannot entertain a doubt that the law ma-
kers intended to require an actual publication of the instru-
ment as a will, in the presence of the subscribing witness-
es, at the time of its execution, in addition to the other
formalities required by the statute.

Whether it was wise to require a formality of this kind,
resting in the recollection of the witnesses merely, where
the instrument upon its face purported to be a will, and
thereby exposing the intention of the testator to be defeat-
ed, by the imperfect or mistaken recollection of the wit-
nesses that the testator at the time he signed the instrument
did *not* declare it to be his last will and testament, is a
question which it does not properly belong to the courts to
decide.    And if the fact distinctly and satisfactorily ap-
pears, as it does in this case, that the testator did not de-
clare to the subscribing witnesses, or in their presence,
that the instrument signed by him and attested by them
was a will, it is the duty of the court to carry into effect
the expressed will of the law givers; by declaring that such

1840.

Brinckerhoof
v.
Remsen.

an instrument is invalid as a testamentary disposition of the decedent's property.

No particular form of words, however, is necessnry, even under this statutory provision, to communicate the information from the testator, to the attesting witnesses, that he knows and understands the nature of the instrument he is executing, and that he intends distinctly to recognize it as his will. I think, therefore, there can be no reasonable doubt that if this will and this attestation clause, or even the attestation clause alone, had been read over in the presence and hearing of the testatrix, so that the witnesses could be fully satisfied that she knew and understood its meaning, her request to them to attest it as witnesses, would have been such a recognition of the instrument as her will as to make it a good execution thereof, according to the spirit and intent of the statute. So also where the witnesses have signed their names to such an attestation clause, the mere inability of the witnesses to recollect whether the requirements of the statute had or had not been complied with, probably would not be sufficient to invalidate the will ; unless it appeared that they signed their names to the attestation clause without hearing it read or knowing what was contained therein. It is certain that if the witnesses were dead, proof of their hand writing, and of the hand writing of the testatrix, would have been sufficient evidence that all the formalities required by the statute had been complied with ; unless the fact was disproved by other evidence. (*See* 3 *Robinson's Virg. Prac.* 370, *and the cases there referred to; and Scribner* v. *Crane,* 2 *Paige's Rep.* 149.)

In the present case, both the subscribing witnesses expressly disprove the fact that this provision of the reviscd statutes as to publication was complied with ; notwithstanding the statement to the contrary in the attestation clause, to which they subscribed their names. Clark swears that the will was not read to the testatrix, nor did he read it ; except the last line of the attestation clause, which of course gave him no information that the instrument he was

witnessing was a will. And that he did not ask her if it was her will ; nor did she or any one present say it was a will. The other witness swears substantially to the same thing. So far from declaring to the witnesses that it was her will, the only circumstance from which it can be inferred that she herself knew the nature of the instrument she was signing, is, that she requested one of the witnesses to add the place of his residence after his name. But the witness does not say that this conveyed any information to his mind that the instrument he was witnessing was a will. And the intimation to the testatrix that the place of the witnesses' residence should be stated, may have come from Jane Brinckerhoof, one of the respondents, who was present ; and who drew the will with this attestation clause, stating among other things that the witnesses had written their respective places of residence opposite their names. Or it might have been made to her by the other witness, who says he read this line of the attestation clause ; and who had been informed, by the person who sent him there, that the instrument he was sent to witness was probably a will.

Independent of this proof that there was in fact no publication of the instrument, by the testatrix, as her will, in the presence of these witnesses, to enable them clearly to understand from her that they were attesting her will, the circumstances under which the will was executed are calculated to throw suspicion upon the whole transaction. The will is made by an aged lady who had lived far beyond the ordinary period of human life ; and there is no evidence that she ever read the will or heard it read. It was in the hand writing of one of her daughters, who took a much greater interest in the estate under the will than she would have done in the case of an intestacy. And although another of the testatrix's children, who was examined as a witness before the surrogate, swears he was requested by her to procure a will to be drawn, about a year previous to the time this one was made, he admits this is not an exact copy of that draft ; without producing the draft or even explaining in what the difference consisted. The

testatrix also appears to have had a large family, and probably must have had very many respectable acquaintances in the city of New-York ; and yet one of the witnesses, sent by her son-in-law to attest the execution of the will, was an entire stranger to her and to her family. For he swears he never saw either the testatrix or the other ladies, who were present, until the time he was called upon to witness the will. He stayed in the house ten or fifteen minutes, and probably never saw her afterwards. He, therefore, appears to have been a very improper if not an incompetent witness to her will ; for he could not know, except from the information of others, that she was the individual whose will the instrument to which he subscribed his name purported to be. Under such circumstances, and upon an acquaintance of ten or fifteen minutes, he is called upon not only to witness the formal execution of the will itself, but to prepare himself to testify to the identity and mental capacity of this old lady ; who he says, from the manner in which she was spoken to by others, he supposed to be somewhat deaf.

Cases of emergency may, and frequently do occur, in which it becomes necessary to resort to witnesses, to attest the execution of wills, who are to a great extent strangers to the persons whose wills they are called upon to witness. But as the signature of the witness, in case of his death or absence, is prima facie evidence that he knew the testator named and described in the will to be the person who executed the same, and that such testator was of sound and disposing mind and memory, as well as that all the formalities required by law in the execution of the will were complied with, no one is justified in putting his name to a will as a witness until he has fully satisfied himself of the identity of the testator, and of his capacity to make a will. Neither should the witness set his name to an attestation clause, certifying that the testator declared in his presence that the instrument thus witnessed was his last will and testament, when in truth no such declaration was made ; and when the witness could not know, from any thing that

1840.

Brinckerhoof
v.
Remsen.

transpired at the time, whether the testator supposed he was executing a will or some other instrument.

The conclusion at which I have arrived in this case, from the testimony before the surrogate, is that the instrument propounded as the will of Dorothea Brinckerhoof, was not executed with the formalities required by the revised statutes, to make it a valid will.  The sentence or decree appealed from must, therefore be reversed ; and a decree must be entered, declaring the invalidity of the instrument propounded as a will, and that the decedent died intestate. Costs are to be allowed to the appellants, both in this court and in the courts below ; to be paid out of the estate.  And the proceedings are to be remitted to the surrogate of the city and county of New-York, to the end that administration may be granted as in cases of intestacy.

Sentence and decree accordingly.(a)

---

(a) As to the necessity of a strict compliance with the forms required by statute in the execution of wills of personal estate as well as of lands, see 1 *Curteis' Ecclesiastical Reports*, 914 ; *George* v. *Rielly*, 2 *Idem*, 1 ; *Anichini* v. *Anichini*, *Idem*, 210 ; the case of the will of *Ann Rawlins*, *Idem*, 326 ; and the case of *Howell's will*, *Idem*, 342.  And as to wills drawn for aged persons, or persons of feeble intellect, without previous instructions from them, see *Billinghurst* v. *Vickers*, 1 *Phill. Rep.* 187 ; *Paske* v. *Ollatt*, 2 *Idem*, 323 ; *Ingram* v. *Wyatt*, 1 *Hagg. Eccl. Rep.* 384 ; *Baker* v. *Batt*, 1 *Curteis' Rep.* 125 ; *Sankey* v. *Lilley & The King's Proctor*, *Idem*, 402 ; *Barry* v. *Butlin*, *Idem*, 638 ; and *Durling & Parker* v. *Loveland*, 2 *Idem*, 225.