HOYSRADT *et al. v.* KINGMAN *et al.*

It is not necessary to the due attestation of a will that the witnesses should subscribe in the presence of each other. It suffices that each witness subscribe in the presence and at the request of the testator, but severally and apart as respects each other.

An acknowledgment by the testator of his signature and execution of the will, is equivalent to the actual seeing by the witness of the physical act of subscription.

APPEAL from the Supreme Court. The executors of John Hoysradt, deceased, propounded before the surrogate of Columbia his last will and testament, bearing date August 2, 1854, and disposing of both real and personal estate. The surrogate decreed that the instrument was not executed and attested in the manner prescribed by law. Upon appeal to the Supreme Court, this decree was reversed at general term in the third district, and the surrogate required to admit the will to probate. Two of the heirs-at-law appealed to this court. The facts are sufficiently stated in the following opinion.

*John K. Porter,* for the appellants.

*John H. Reynolds,* for the respondents.

DENIO, J. This case arises on appeal from a judgment of the Supreme Court, reversing a decree of the surrogate of the county of Columbia, by which decree the alleged will of John Hoysradt was refused probate, as not having been executed and attested according to law. The judgment of the Supreme Court declared it to have been duly executed, and directed the surrogate to admit it to probate and record.

The will was attested by three witnesses, two of whom were nephews of the testator, and all of them his neighbors, and they were, respectively, members of different families. The

testator, in the forenoon of the day on which the will is dated, called upon one of the witnesses and desired him to draw his will, which he did, according to his instructions then given. After reading it to him several times, he approved and signed it, and the witness attested it at his request and in his presence. It was then put into an unsealed envelop, and was taken by the testator to another of the witnesses, living a short distance from the first, to whom he acknowledged the execution and declared it to be his last will, and who thereupon signed it as a witness at his request and in his presence. The same facts took place as to the third witness, who lived in the same neighborhood, to whom the testator took the will as soon as the second witness had attested it. There was no question but that all the formalities required by law were observed on each occasion; and it was conceded that the will was properly executed, provided the witnesses could attest it separately, which was the only question in the case.

It was well settled in England that the provision of the statute of frauds, which governed the execution of wills of real estate, until the year 1837, did not require that all the witnesses should attest the will at the same time. In *Cook* v. *Parsons* (Prec. Ch., 184), and in *Jones* v. *Lake*, reported in 2 Atkyns, 126, in a note, the point was expressly decided. The latest of these cases was adjudged in the year 1742, and from that time to the present I do not find that the doctrine has ever been questioned by any decided case; but it has been repeatedly confirmed. *Ellis* v. *Smith* (1 Ves., Jr., 11), was decided in 1754, by Lord Chancellor HARDWICKE, assisted by Sir JOHN STRANGE, Master of the Rolls, and by the Chief Justice of the Common Pleas and the Chief Baron of the Exchequer. The principal question was, whether the testator's declaration before the witnesses, that the paper was his will, was equivalent to signing it before them; and it was held that it was. After noticing the prior cases directly upon the point, those above referred to, which hold that the witnesses may attest upon different occasions, were mentioned by the judges as not less conclusive upon the point in dispute. The argument was this:

The statute of frauds requires that all devises of land should be in writing and signed by the party so devising the same, &c., and should be attested and subscribed, in the presence of the devisee, by three or four credible witnesses. Now, if the attestation may be at several times—one witness attesting at one time and another at another—it is clear that one or more of them must attest an acknowledgment of the signing, and not the act of signing; for the subscribing of an instrument is a single act, and all who witness that act must necessarily do it at the same time. Thus, the Master of the Rolls said, " to permit the witnesses to attest at several times, is to admit that the asseveration of the testator, that it is his will, shall be equivalent to signing it before the witnesses; and to determine otherwise at this time would introduce confusion and uncertainty, and sap the foundation of much property which rests on former decrees." In commenting upon the cases which hold that several attestations by the several witnesses were allowable, Lord HARDWICKE said they supported the case then before the court by their direct similitude, and not from any consequential reasoning; " for I apprehend," he added, " that the determination of all these cases was grounded on this, that a declaration by the testator was good; for if he signed three times, there were three executions, and none could be good within the statute. I consider them as authorities that come up to the very question; and they are stronger, as they are admitted by the counsel on both sides, and no attempt has been made to shake them." . That part of the statute of frauds which related to devises was reënacted in this State, and furnished the rule as to the execution of wills, until the enactment of the Revised Statutes in 1830. The language of the English and of our statute is so nearly identical that it is certain that no substantial change was intended. The cases which have been referred to, having been decided prior to the Revolution, are authority with us to the same extent as in the English courts. It thus satisfactorily appears, that, prior to the changes which have taken place in our own time, as to the formal requisites of the due execution of wills, in the statutes of both

countries, it was settled law that each of the witnesses might attest the will separately and at a different time from each of the others. The rule is not weakened by the consideration that several of the English judges have declared, as did Lord HARDWICKE, in *Ellis* v. *Smith*, that, if they had not been controlled by the prior adjudications, they would have held that the witnesses ought to attest the will in the presence of each other. On the contrary, it shows the firmness with which the rule was considered to be settled. And the late cases of *White* v. *The British Museum* (6 Bing., 310), and *Wright* v. *Wright* (7 id., 457), exemplify the consistency with which it has been adhered to down to modern times. In both these cases, the attestations of the several witnesses were at different times, and in the first there was an interval of two months between the several attestations; yet the wills in both cases were held well executed. Chancellor WALWORTH had occasion to go over the English cases, in the course of his opinion in *Jauncey* v. *Thorne* (2 Barb. Ch., 40); and he stated the rule to be as I have considered it, though the case before him did not necessarily call for its determination.

But it has been argued by the counsel for the appellant that the Revised Statutes, under which the present will was executed, have changed the rule in this State, as it is certain the English Parliament has done, · by the new statute of wills, passed in the year 1837. That act declares that every will shall be signed at the foot or end thereof, by the testator, or by some other person in his presence and by his direction, and that "such signature shall be made or acknowledged in the presence of two or more witnesses, *present at the same time*, and such witnesses shall subscribe the will in the presence of the testator." (Stat. 4 William IV and 1 Vict., ch. 26, § 9; 2 Jarm. on Wills, App., 758.) Our statute, passed a few years earlier, does not contain the language which so plainly settles the question in the English act. It declares that every will shall be executed and attested in the following manner: "1. It shall be subscribed by the testator at the end of the will; 2. Such subscription shall be made by the testator in the presence of

each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses; 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament; 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator." (2 R. S., 63, § 40.)

It is quite apparent that these statutes were both drawn with a distinct reference to the former acts, and to the decisions of the courts under them. For instance, it had been held, under the statute of frauds, that the name of the testator, written by himself, occurring in any part of the instrument, was a sufficient signing. Both the modern statutes are careful to change this rule by requiring the will to be signed at the foot or end thereof, as expressed in the British act, or at the end of the will, according to our statute. It had been rendered doubtful, by the decisions of the courts, whether it was essential for the testator to state to the witnesses that the instrument was a will. This point was put at rest in this country by the direction that the testator should declare the instrument to be his last will and testament; but the British legislature has omitted that direction, and it is not there necessary that a publication of the testamentary character of the paper should be made. It was settled by the courts, as has been shown, that an acknowledgment of the signature by the testator to the witnesses was equivalent to a signing in their presence; but Lord Chancellor HARDWICKE, and several other distinguished judges, had placed their decisions of that point wholly on the ground of precedent, and had stated that, if the question were *res nova*, they would have held a different opinion. The attention of the legislature in both countries having thus been attracted to the question, it was thought proper distinctly to declare the legislative will respecting it; and hence the provision in both the recent statutes was, that the signature should be made, or acknowledged, in the presence of the attesting witnesses; thereby overruling the doubts which had been expressed as to the policy of permitting

an acknowledgment to stand in the place of an actual signing before the witness. Without pursuing further these evidences that the statutes were drawn with a full knowledge of, and a constant reference to, the judgments of the courts upon the former acts, we come directly to the point under immediate consideration, as to the necessity of the witnesses attesting at one and the same time. It has been seen how this particular feature was connected with that which allowed an acknowledgment to stand in the place of a signature. When the statute, according to the most obvious interpretation of its language, required the witnesses to attest the signature of the testator, there was great strength in the position that the act of signing, being indivisible and incapable of being performed more than once, the attestation of that act must be confined to a single occasion; but, when it came to be held that an acknowledgment by the testator was a thing which might be attested by the witnesses, then, inasmuch as that might be repeated, there was no difficulty in permitting several attestations by the several witnesses. And when the legislature of this State came to declare that they might attest an acknowledgment of the testator's signature, it resulted, *prima facie*, that there might be several attestations, as there might be several acknowledgments, of the same will. But this consequence might be precluded by a different direction in the act, which might require the witnesses to be together at the time of attesting. At this point, the legislatures of the two countries again diverged; for, while the British Parliament has carefully provided that the attesting witnesses shall all be present at the same time, the legislature of this State, it appears to me, has been content to abide by the contrary rule, which had been established by the adjudications of the courts. There is nothing in the Revised Statutes equivalent to the language of the new English act in this respect, or which, in any way, indicates an intention to require the witnesses to attest at the same time. On the contrary, the language, it seems to me, contemplates that the witnesses may attest separately. The words, "*each* of the attesting witnesses," as twice used in the second division of the section, are distributive in their usual signification. The

word *each* is very commonly used in opposition to *both* or *all*, for the purpose of showing that the subjects or things spoken of are to be taken separately, and not collectively. The word, it is true, is used inaccurately when applied to the act of signing, but with perfect correctness where it relates to the act of acknowledging. But, without relying too much upon this verbal criticism, it is sufficient to say, that there is nothing in that division of the section from which it can be inferred that the legislature intended that there should be but a single attestation, in which both of the witnesses should unite. The third division is relied upon by the appellant's counsel; and it is argued that the word *time* is used in the singular number, when it would have been plural if it had been contemplated that there might be more than one occasion of making or acknowledging and attesting the instrument. This criticism is not borne out by the general usage in constructing such sentences. Suppose it to have been plainly declared that the will might be acknowledged before the witnesses either when together or separately: it would be entirely correct to add, that at the *time* of acknowledging (instead of the *times*), the testator should declare, &c. The argument of the respondent is, not that the witnesses must attest separately, but only that they may so attest. If the testator only signs the paper, and never otherwise declares its authenticity, then, inasmuch as that is a thing which does not admit of being repeated, the witnesses must necessarily be together when they attest it; but if he acknowledge it before the witnesses, or sign it before one and acknowledge it before the other, the word *time* applies itself distributively to each occasion without requiring any further circumlocution. The last division of the section does not add anything to the argument of the appellant's counsel. It declares that there shall be two attesting witnesses, each of whom is to sign his name as a witness, &c. This is substantially like the corresponding provision in the statute of Charles II, and in the Laws of 1813, except that the word *each*, which is not in those acts, is used here. But I do not lay any stress upon that, as the act of signing is a thing which the witnesses must necessa-

Hoysradt *v.* Kingman.

rily do separately. Like the former statutes, it is silent upon the question whether the witnesses must be present at the same time or not. The argument arising out of this omission, to declare that the witnesses must attest together, is very strong, and, to my mind, entirely conclusive. The legislature was preparing a new set of directions for the execution of last wills. It had before it the former statutes, and the judgments of the courts upon them. It proceeded, as we have seen, to settle the disputed questions to which these judgments had given rise; to change the former rules, where it was thought expedient; and to express, in the plainest practicable manner, as the nature of the subject eminently required, the new rules which it was thought fit to prescribe. It was found to be well settled that the attestation of the witnesses might be made separately. Such had been the undoubted law in England, and in this country, for a century. Acting in the light of such facts, the inference is not to be resisted, that, if it had been intended to change that rule, it would have been done by explicit language; but instead of that, we find that, in the part of the statute where the change would naturally have been made if any were intended, the language is substantially the same as in the prior statutes; while in other portions it strongly favors the idea that separate attestations were in the contemplation of the framers of the statute. The British legislators, in acting upon the subject a few years later, from the same point of view and under substantially the same circumstances, resolved to change the rule, and accordingly made use of the plain and distinct language which every one would expect where such an alteration was determined upon.

The general right to dispose of one's property, by act in writing to take effect at his death, is established by our statute respecting wills, and has always been the law of this State. The restrictions which, from motives of prudence, are thrown around that right, should be construed liberally in favor of the testament, and forms should not be required which the legislature has not plainly prescribed.

If I am right in the view which I have thus taken of the question, the will under consideration was properly executed, and the judgment of the Supreme Court should be affirmed.

All the judges concurring,

Judgment affirmed.