EDWARD BAGLEY, Appellant, *v.* LEONARD J. BLACKMAN et al., Respondents.

(GENERAL TERM, EIGHTH DISTRICT, APRIL, 1870.)

Unless the testator declares, or gives the witnesses in some form to understand, at the time of making or acknowledging his subscription, that the instrument signed is his will, there is no sufficient publication.

Accordingly, where the witnesses had been sent for to witness the testator's will, and went for that purpose, but had no other information, that they were witnessing his will.—*Held*, that the publication was insufficient.

APPEAL from a decree of the Surrogate's Court of Erie county, admitting to probate the last will and testament of Libbius Bagley.

*Corlett & Tabor*, for the appellant.

*Lewis & Gurney*, for the respondents.

Present—MARVIN, BARKER and DANIELS, JJ

By the Court—MARVIN, P. J.   The point made by the appellant is, that the testator did not, at the time he subscribed the instrument, declare the instrument so subscribed to be his last will and testament, as the statute requires (2 R. S., 63, § 40, sub. 3).   Lewis J. Peckham, one of the subscribing witnesses, after stating that he went to the house of the deceased in company with the other subscribing witness, says the deceased was at that time sick and not able to be out of his house.   He states who were in the room.   He thinks Mr. Swartout went, at the request of the deceased, and brought the paper (the will) from a trunk in the room.   Bagley asked Swartout where the pen and ink and that paper were. Thereupon he (Swartout) got it and laid the pen and ink and the paper on the table.   The deceased then sat down and signed the paper.   The deceased then asked witness if he would witness that paper.   The witness then sat down and

signed his name as a witness. The deceased then asked where Noyes was. Noyes had stepped out a moment. When he came in, the deceased said something to Noyes about signing it. Noyes stepped up and signed his name as a witness. The witness did not read or hear read the paper or any part of it. The deceased did not, in that interview, use the words " will " or " testament;" but when the witness signed it, the deceased did wish him to put his residence at the end of his name, and he did so. The witness did not know that it was necessary for a witness of a will to write the place of his residence. The witness thinks Swartout took the will and put it back into the trunk and locked it and gave the key to Libbius Bagley. When this witness was requested by a third person to go to the house of Bagley, he was told he was wanted to sign as witness to a will, which was the reason of his supposing it a will, &c. Noyes J. Atwood, the other witness, says the deceased spoke to him and asked him if he would finish that, pointing to the paper lying on the table. (the paper witness had seen the deceased sign). Witness asked the deceased if he wanted him to put his name down, and he said he did, and he signed his name as a witness. Witness thinks the deceased spoke to him about putting his residence down, and he wrote, *Lancaster,* his residence. This witness read no part of the will. The body of it was in the handwriting of his father, Henry Atwood.

The witness did not hear the words " will and testament " used on that occasion. He had been told before, that the deceased wanted him to come and sign a will. Beyond that fact he had no knowledge that the instrument was a will.

The requirements of the statute are clear and specific. " The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament." In the present case there was no such declaration ; there was no publication of the instrument as a will and testament. In *Brinkerhoof* v. *Remsen* (8 Paige, 488), Chancellor Walworth examined the law in relation to the execution and proof of

wills, as it existed in England, under the English statute, and in this State, and the change effected by our Revised Statutes. In giving construction to the provisions of our statute requiring publication, he said that " no particular form of words is necessary, even under this statutory provision, to communicate the information from the testator to the attesting witnesses that he knows and understands the nature of the instrument he is executing, and that he intends distinctly to recognize it as his will." This rule is often referred to and applied in subsequent cases. In *Coffin* v. *Coffin* (23 N. Y. R., 15), one of the attesting witnesses " asked the testator if he wished him to sign or witness the paper as his will; to which the testator answered in the affirmative." Both of the witnesses were present at the time. It was held that this was a sufficient publication, and a compliance with the requirements of the statute. See also *Trustees of Auburn Seminary* v. *Calhoun* (25 N. Y., 442), where the publication of the will was established upon the testimony of one of the attesting witnesses, in opposition to the other.

In *Brinkerhoof* v. *Remsen*, *supra*, and in *Lewis* v. *Lewis* (1 Kern., 220), the probate of the will was refused, for the reason that the proof of execution and publication was not such as the statute requires. The order of the surrogate admitting the will to probate, must be reversed, and an order entered for the settlement of issues, to be tried by a jury. The question of costs is reserved to the final hearing or judgment.

Order reversed.