NEW YORK COUNTY—HON. D. C. CALVIN, SURROGATE—DECEMBER, 1876.

## NEUGENT *v.* NEUGENT.

*In the matter of the probate of the last Will, &c., of* BRIDGET NEUGENT, *deceased.*

Valid publication of a will is not made out by evidence that, immediately before execution, it was read to and approved by the testatrix, in the presence of one only of the two subscribing witnesses.

Where there was no sufficient attestation clause to aid the evidence of execution, it appeared by testimony of the witnesses, that there was no express declaration by the testatrix that the instrument was her will, nor did the witness who attended to its execution make any such declaration to the other subscribing witness; and it appeared that one of them heard the will read to and approved by the testatrix, but the other did not.   *Held*, that there was no valid publication.

Although it is not essential that attesting witnesses should subscribe in the presence of each other nor in the presence of the testator, provided they do so at the time of execution or acknowledgment, yet it is essential that their subscribing be with the knowledge or at the request of the testator.

THIS was a proceeding for the probate of the will of Bridget Neugent, deceased.

George Welsh one of the subscribing witnesses to the paper propounded for probate, and who drew the will, at the testatrix' request, on cross-examination, testified that she told him to sign it for her; that he asked her if she was prepared to hear her will read, that he read it to her carefully; she said it was exactly what she wanted; he asked her if she wanted to sign the will; she took a pen, and handed it to him to let him sign for her; he asked her, " Do you want me to sign for you ? Do you want me to write your name for you ? " "Yes, write my name for me. " She did not say anything about his being a witness to it. He signed his name there voluntarily. Some person in the presence of the sick woman requested that he should be one of the witnesses; he did not remember who.

Michael Cosgrove, a subscribing witness, testified that there was nothing said to him about subscribing as a witness; the lawyer asked him to sign, the testatrix did not. He says, "I did not hear her say anything at the time the will was signed. When I signed, Mrs. Neugent made no remark."

James A. Duggan, the physician, testified as to the soundness of the mind of the testatrix, about the time of the execution of the will.

Mary Goodwin testified that she was present at the execution of the will; that she heard the testatrix say to Mr. Welsh, "sign it;" that Mr. Welsh read the will, and asked testratrix if she was ready; she said, "Yes, sign it." She told him to sign it for her and she made her mark; she testified that the testatrix asked him to sign as a witness, but on further cross-examination, it appeared that she meant by that, that she asked him to sign testatrix' name, which he did; that witness could not

tell what he wrote, or on what part of the will he wrote it.

David Hayward testified that he saw Mr. Welsh sign the will; that witness Cosgrove signed in an adjoining room not in sight, but in the hearing of the testatrix; that he did not hear Mrs. Neugent say anything to Mr. Welsh or Mr. Cosgrove, asking them to sign the will; that she did not state what the instrument was, and that the witness Cosgrove was in an adjoining room, not in the bedroom where the will was executed.

Martin McGarr testified that he was present at the execution of Mrs. Neugent's will. He heard the testatrix say nothing with regard to the signing of the will. The witness George Welsh, was recalled on behalf of the proponent and testified that after he had read the will he asked Mrs. Neugent who her subscribing witnesses were, or if she had them; that he said to Mrs. Neugent he could be a witness; that he did not remember the reply she made; that he did not remember whether she assented; she said nothing against it.

William Burns testified that he was present when the will was read and the testatrix said it was all right, and asked him to write her name, and that Mrs. Neugent said to Mr. Welsh, " you sign it as a witness."

The witness Welsh, who drew the will and appeared to supervise the execution, testified on his recall that he signed the will voluntarily, at the request of some person in the presence of the sick woman, but that he did not remember who made the request; that the other subscribing witness Cosgrove was there to witness the paper; that he did not know that he was requested by any one to sign, but he thinks that Cosgrove was in the bed room where the testatrix lay. The witness testified: " The thing was so unsignificant that I paid little atten-

tion to it; the probability is though that I done the work right, I don't remember the reply she made, but I asked her, if she had witnesses, and then Burn's name was mentioned, and I said no." He testified also that he could not tell who mentioned Burn's name, but he thought it was the testatrix; that he told the testatrix he could be a witness, and could not remember what she said, but she did not object to it; that he did not know whether she nodded, or spoke; this is the substance of the testimony.

PHILIP MALONE, *for proponent.*

JOHN M. MACKAY, *for contestant.*

THE SURROGATE.—In the absence of an attesting clause, where the person who drew the will is so uncertain as to what was done, it would be very unsafe to adjudge the will in question properly executed. If other formalities had been observed, I should feel somewhat reluctant to hold that there was evidence of a publication of the will, in the absence of an attesting clause, yet as it was read to the testatrix, it is quite probable that she understood the nature of the instrument that she procured the witness, Welsh, to subscribe for her.

In *Campbell* v. *Logan* (2 *Bradf.*, 98), it was held that where the testator desired a former will to be altered, and a new will was drawn, and it was read to the testatrix, and signed by her, she stating the writing was sufficient, and asked the witnesses to sign, though they could not remember that she declared it to be her last will, but only said it was all right, the evidence established a substantial declaration by the deceased, of the testamentary character of the instrument at the time of its execution.

In *Moore* v. *Moore* (2 *Bradf.*, 265), Surrogate BRADFORD says, that no particular form is requisite; all that

the law requires is that the testator shall communicate to the witness that it is his will, and desires them to attest. This can be done by reading, and other acts performed by third persons, provided an intelligent assent on the part of the testator is shown.

In *Carle* v. *Underhill* (3 *Bradf.*, 105), the following language is used : "When the testator in the presence of the subscribing witnesses dictates the provisions of the instrument, reads it aloud after it is shown, signs it, and requests them to give their attestation, the substance of what the statute requires is performed; that then he manifests it, and makes public and open, the nature of the act."

In *Bagley* v. *Blackman*, (2 *Lans.*, 41), it appeared that the instrument propounded was executed by the testator, and the witnesses were requested to sign the same, and it appeared that they had been called for the purpose of signing the will, but it no where appeared that the testator declared what the instrument was, and the witnesses had no knowledge that the instrument was a will, except from that fact. The court reversed the order of the Surrogate admitting the will to probate.

In *Brinkerhoff* v. *Remsen* (8 *Paige*, 488), it was held that where the instrument propounded was in the hand writing of a third person, and executed by the deceased by signing it, and acknowledging it to be her hand, and seal, in the presence of the subscribing witnesses, and the instrument was not read, nor was anything said at the time from which the witnesses understood it to be a will,—the instrument was not duly executed, though the attestation clause which was not read in the hearing of the witnesses stated the will to have been duly published in the presence of such witnesses.

At page 498, the Chancellor says: "I think there can

be no reasonable doubt, that if this will, and attestation clause, or even the attestation clause alone, had been read over in the presence and hearing of the testatrix or that the witnesses could be fully satisfied that she knew and understood its meaning, that request to them to attest it as witnesses, would have been such a recognition of the instrument as her will, as to make it an execution thereof, according to the spirit and intent of the statute."

. In the *Matter of Forman* (1 *Tucker*, 205), one attesting witness testified that the testator told her in the room where the will was executed, before signature, that it was her will; and the other witness testified that while she did not, in the room where the will was executed, tell her that it was her will, yet when she came to the kitchen to call her as a witness, she told her that she wanted her to witness her will—held that this was sufficient, together with the proof that she signed the instrument in the presence of two witnesses, and they signed their names in her presence, and in the presence of each other.

In *Gilbert* v. *Knox* (52 *N. Y.*, 125), it appeared by the testimony of one of the subscribing witnesses, that he was present at the execution; it was subscribed by the testator in the presence of the witnesses; one of the witnesses stated to the testator that it was necessary that he should request the witnesses to sign his will, as such, and say that it was his (testator's) will, and that he wished the witness to sign as such. This occurred after the will was signed, and before the witnesses signed, and in the presence of the testator, and each of the witnesses; the testator made no reply. Witness testified that he had no doubt but that the testator heard him, and that the testator took the will, and retained it. The Surrogate refused the probate as for want of a

valid publication, but the Court of Appeals reversed it, holding that there was a valid publication, as the witness had charge of the execution, and assumed to speak for the testator, and that his agency was consistent with his relation to the testator, and the will. Judge ANDREWS says, at page 130, " the circumstances show that the testator intended to make a valid execution of the will, and the witnesses signed it at his request within the case of *Peck* v. *Cary*. If he is held to have adopted the declaration of Cohn (the witness) in respect to the attestation by the witnesses, the presumption is equally strong that he adopted that part of it in which Cohn declared that it was the will of the testator."

The cases above cited present the extreme limit of a valid publication, and it seems to me that this case does not come up to the standard laid down by either of the cases cited. In this case there appears to have been no declaration by the testatrix that the instrument was her will, nor did Welsh, who attended to its execution, make any such declaration to the witness Cosgrove, nor does it appear that Cosgrove heard the will read, and all he knew about the instrument being a will was, that Mr. Welsh asked him to sign as a witness; and from the evidence, I am satisfied that there was not such a publication as is required by the statute. Indeed, the testimony of the witness Cosgrove does not show that he was present when the testatrix signed the will, or that he heard her make any remark in respect to it, neither did she state what the instrument was, nor ask the witnesses to subscribe the same as such.

The weight of the testimony upon the subject of the request of the testatrix to the witness Cosgrove, to sign as such, seems to be, that nothing was said by the testatrix, but he was requested to sign by the other witness Welsh.

It does not appear that that request was in the presence, or hearing of the testatrix, and it does quite clearly appear that the subscribing by Cosgrove was in an adjoining room, and I think there is an absence of proof that the testatrix knew that Cosgrove subscribed the instrument. I am aware that it is not essential that the attesting witnesses should each subscribe in the presence of the other (*Hoysradt* v. *Kingman*, 22 *N. Y.*, 372; *Willis* v. *Mott*, 36 *Id.*, 486), nor is it necessary that the witnesses should sign in the presence of the testator. (*Rudden* v. *McDonald*, 1 *Bradf.*, 352; *Jackson* v. *Christman*, 4 *Wend.*, 277). If they sign at the testator's request, although in an adjoining room, out of sight, it is sufficient, though their signing must be done at the time of the execution, or acknowledgment with the knowledge and at the request of the testator (*Lyon* v. *Smith*, 11 *Barb.*, 124), but I think the proof in this case fails to show that the signing of the witness Cosgrove was with the knowledge, or at the request, of the testatrix.

In *Lewis* v. *Lewis* (11 *N. Y.*, 220), Mr. Justice ALLEN says, "the legislature have made four things essential to the proper execution and attestation of a will. The want of conformity to any of these requisites, will validate the instrument as a testament. They are:

1st. A subscription by the testator at the end of the will.

2d. The making of such subscription in the presence of each of the attesting witnesses, or an acknowledgment of the making of the same to them.

3d. A declaration by the testator at the time of making or acknowledging the subscription, that the instrument so subscribed, is his last will and testament.

4th. The two attesting witnesses shall sign at the end of the will at the request of the testator."

In that case, one of the witnesses testified that he signed his name at the end of the attestation clause, at the request of the testator, and that the other witness was called by the deceased into his private office, where he had the paper of which he turned up so much as would allow them to write their names, requesting them to sign the same, and add their residence, and that he said "I declare the within to be my free will and deed;" that this was all that was said; that the witness did not know it to be a will, but thought it was, from the fact that the deceased that morning sent out, and procured a blank will; that he did not see the paper signed by the testator, or see his signature. It was held that the will was not duly proved.

On a careful review of all these authorities, and the testimony in this case, I am of the opinion that the will in question has not been duly proved, and that the probate should be denied, for the reason that the testatrix did not publish the instrument according to law, and that the subscribing witness Cosgrove did not subscribe at the request of the testatrix, or in her presence.

Decree accordingly.