(82 Misc. Rep. 565.)

### In re ROE'S WILL.

(Surrogates' Court, New York County. November 11, 1913.)

1. WILLS (§ 117*)—EXECUTION—PRESENCE OF TESTATOR AND WITNESSES.

It is well settled that the present statute of wills does not require the simultaneous presence of testator and the attesting witnesses at the execution of a will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 299–301; Dec. Dig. § 117.*]

2. WILLS (§ 120*) — EXECUTION — ATTESTATION AND SUBSCRIPTION BY WITNESSES.

Though the simultaneous presence of testator and attesting witnesses is not required, yet both a sufficient publication and rogatio testium must be proved by each of the attesting witnesses; hence, where testatrix did not request a witness to attest nor acknowledge her signature to him, the will was not well executed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 314–317; Dec. Dig. § 120.*]

3. WILLS (§ 289*)—EVIDENCE—PRESUMPTION—HOLOGRAPHIC WILL.

Though publication in case of a holographic will is more easily presumed than is the case with an allographic testament, yet such presumption will not override proof of a noncompliance with the statute.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

Application for the probate of the will of Alida Roe, deceased. Probate denied.

James F. Carroll, of New York City (William S. Bennet, of New York City, of counsel), for proponent.

Frank M. Patterson, of New York City, for contestant.

FOWLER, S.   [1] The proofs show, in substance, that Alida Roe, the alleged testatrix, evidently animo testandi drew the very informal paper propounded in this proceeding. I shall assume that it is, as alleged by proponent, in her handwriting, or a holograph. It is dated at the foot, 31st of December, 1911. It seems Mrs. Roe, the maker of the will, on the 5th of March following called on one of the attesting witnesses, Mr. Michels, an undertaker, at his place of busi-

ness, No. 208 East Forty-Seventh street, Manhattan, and then handed him the paper in question. It was already signed by Mrs. Roe before her visit to Mr. Michels, and she simply told Mr. Michels that the paper was her will, but Mrs. Roe did not at any time state to Mr. Michels that it was her signature which was affixed to the paper. Mr. Michels informed Mrs. Roe that she must have two witnesses to her will. She said, "I will go over and see Mr. Mealy." This it seems she did, for Mr. Mealy's signature is on the paper. The next evening in Mr. Michels' absence from his office testatrix left the paper at his office, with Mr. Mealy's signature affixed. Mr. Michels, without any request, then, in Mrs. Roe's absence, affixed his own signature as a witness, and kept the paper, expecting Mrs. Roe to call for it. Meanwhile she died. The paper writing remained in Mr. Michels' custody until produced in court.

. Mr. Mealy, the other attesting witness, testified in substance that in March, 1912, or thereabouts, Mrs. Roe asked him at No. 301 East Forty-Sixth street, Manhattan, to sign her will as a witness, and then showed him her signature telling him it was her signature. Mr. Michels, the other witness, was not, however, then present. At no time were the attesting witnesses together in the presence of Mrs. Roe. Whatever occurred between Mrs. Roe and the attesting witnesses took place on separate occasions.

The question is whether this was a good execution pursuant to the existing statute of wills. A short retrospect will, perhaps, facilitate the correct application of the principle of testamentary law controlling this cause. Prior to the passage of the first statute of wills, 32 Hen. VIII, c. 1 (afterwards in force in the Province of New York and again expressly re-enacted after our independence of the Crown by the new state Legislature, 2 J. & V. 93), the Ecclesiastical Courts in England did not follow the Roman law regulating the execution of wills, as the English jurist Jenks thinks they logically should have done (Jenks' Histy. English Law, 267, 269). Contrarywise, by the testamentary common law of England, almost any paper of a testamentary character sufficed for a will of personal property. Signing by the testator was unnecessary; publication was unnecessary. If the testament was a holograph, even witnesses were unnecessary. Swinburne, 353; 4 Burns, Ecc. Law, 123. Nuncupative wills of chattels were commonly allowed if made before witnesses. Godolphin's Orphans Legacy, 13. The early tendency in England was to adopt that part of the Roman law governing unsolemn testaments and not that relative to solemn testaments. Godolphin's Orphans Legacy, 65; Swinburne on Wills, pt. 4, §§ 23, 24. After the statute of wills (32 and 34 Hen. VIII), even a devise need not by the testamentary law of England be signed by the testator.

It was not until the statute of frauds (29 Car. II) that the execution of devises was regulated by statute, and thereafter they were required to be in writing, signed by the party, or some other in his presence and by his direction, and attested and subscribed in the presence of the devisor by three or four credible witnesses. The statute of frauds, although passed after New York had an established government of its

own, and although New York was not named in the act, was regarded as in force in this province, and was subsequently so treated by the Legislature of the state of New York. It had thus become a part of the statute of wills in the Province of New York as in England, a condition of things repeated by the first reconstructive legislation enacted after our independence of the Crown. When the English statutes operative in New York came to be re-enacted by authority of the independent state government, the old wills acts (32 and 34 Hen. VIII), with its several amendments, was re-enacted here (chapter 47, Laws of 1787; 1 K. & R. 178; 1 R. L. 364), and until the Revised Statutes our law of wills corresponded very closely with the old law in force before our independence of the Crown. Even after the statute of frauds a devise was well executed if attested by three witnesses who subscribed their names at the request of the testator, although at several times and out of each other's presence. Gilb. 92 Vin. Devise N., 10, 12; Lovelass on Wills, 299; Smith v. Codron, 2 Ves. Senior, 455; Parsons v. Cook, Pre. Ch. 184, 2 Vern. 429; Jones v. Lake, 2 Atkyns, 176. The first case on this point arose in Trinity Term (34 Car. 2; Anon, 2 Ch. Cas. 109). In Jones v. Lake, in the year 1742, it was again argued that, if the witnesses did not act together on one occasion, the testator might be sane when some attesting witnesses attested, and insane when others attested. But the court held that the old statute of wills, as amended by the statute of frauds, did not require the simultaneous presence of the attesting witnesses. This decision was binding on the Privy Council and consequently on appeals from the Province of New York. Thus the law of New York was fixed.

In England the law of wills was extensively remodeled and for the future regulated by the wills act of 1838 (1 Vict. c. 26). It is only necessary to allude to those reforms in the common law which reflect light on this case. Every will in England was required by the English "wills act" of 1838 to be signed at the end by the testator, or by some other person in his presence and by his direction, and such signature must be made or acknowledged in the *simultaneous* presence of two witnesses. Hindman v. Charlton, 8 H. L. Cas. 160; Wyatt v. Berry, 1893, 5 P. Of course the Act 1 Vict. could have no influence on the then independent common law of the state of New York. But as the English act was enacted subsequently to the Revised Statutes of New York it is significant. The New York Revised Statutes very soon after their passage were reprinted in England, where they received the closest attention from the bench and the bar of that country. There was at that time, as at present in the instance of the equity rules of the federal courts, some indirect interaction between common-law countries. While the Revised Statutes of New York made some changes in the substantive testamentary common law and the old statute of wills, the part of the revision relating to wills did not go so far as did the subsequent English "wills act" of 1838. Chapter 6, pt. 2, R. S., relating to wills and testaments, neglected to provide that the testator's signature or its acknowledgment should be made in the *simultaneous* presence of two witnesses. 2 R. S. 63, § 40, now

section 21, Decedent Estate Law. This, as it proved subsequently, was an error or omission of consequence.

By the Roman law, which may be regarded as the common law of Europe, the formal authentication of a testamentary act was carefully prescribed, and the simultaneous presence of the testamentator and the attesting witnesses at the moment of publication and subscription gave the testamentary session a solemnity and the testamentary paper an authenticity which is expedient in any prosperous and highly developed state. By the Roman law "rogatio testium," or testator's request to the attesting witnesses to act as such, was essential (D. 28, 1, 21, 2; D. 28, 1, 20, 8). Mr. Jenks in the most recent "History of English Law" calls the departures from the Roman Law of Wills by the Ecclesiastical Courts of England illogical (pages 267, 269). If we have regard to the fact that the transmission of an estate on the death of its owner to a new proprietor is a matter of public law, and not a matter of private law, we shall perceive that an act of testamentation is always in law one of extreme importance, not only to the persons immediately concerned, but to the public at large. Excepting in rare cases of emergency the formal execution of a will before assembled witnesses should be such as to cast no doubt on the authenticity of the will. By the Roman law the signing and sealing of the testament by the testator, or in his presence, and the due publication of the will, must take place on one occasion, "unitas actus," before the testator and the assembled witnesses, who must then subsign and subseal the same before the session could be interrupted by extraneous matter. The statute of England (1 Vict.) revived for England the necessity of a simultaneous presence of the attesting witnesses and the testator. But unfortunately, as I believe, our modern law in this state is a strict logical sequence of the older testamentary law of England and New York. It does not require simultaneous presence of the attesting witnesses, although the sense of the profession of the law in this state, as to the necessity of a simultaneous presence, is best evidenced by their almost universal adherence to the practice of a simultaneous presence of the testator and the attesting witnesses on any occasion of celebrating a last will. Every "attestation clause" in common use on wills recites accordingly.

The New York Revised Statutes of 1830 required that the testator's subscription to a will should be made in the presence of *each* of the attesting witnesses or should be acknowledged by the testator to have been so made to *each* of the attesting witnesses. Section 40, 2 R. S. 63, now section 21, Decedent Estate Law (Consol. Laws 1909, c. 13). The Revised Statutes of Wills required only two attesting witnesses instead of three or more required by the old statute. As framed, it was easier to construe the Revised Statutes as dispensing with the simultaneous presence of the attesting witnesses than it was to so construe the old statute of wills as amended by the statute of frauds. The Revised Statutes, it will be observed, used the distributive "to each witness." Yet in Seymour v. Van Wyck, 6 N. Y. 120, a very badly reported case, there was evidently some latent idea that the simultaneous presence of attesting witnesses might be necessary under the

Revised Statutes in order to constitute a good execution of a will. But in Hoysradt v. Kingman, 22 N. Y. 372, the statute was fully considered and construed as the old statute of wills had been construed. The simultaneous presence of attesting witnesses was in that case held to be unnecessary. The English cases on the old statute of wills were reviewed in Hoysradt v. Kingman, and held to have been binding here as authority. In conformity with the old law, the Court of Appeals then proceeded to place the construction of the Revised Statutes at rest. Mr. Surrogate Rollins in this court followed Hoysradt v. Kingman in Barry v. Brown, 2 Dem. Sur. 309, as did my immediate predecessor, Mr. Surrogate Thomas (Matter of Diefenthaler, 39 Misc. Rep. 765, 80 N. Y. Supp. 1121). This point, indeed, is well settled law in this state. Matter of Levengston, 158 App. Div. 69, 142 N. Y. Supp. 829. This is an instance where a statute of wills might well have received a different construction from that accorded. When a statute of wills requires two witnesses to an act, it ought not to be satisfied by proof of a single different witness on two separated occasions. In old testamentary law and in the Ecclesiastical Courts one witness was no witness, "testis unus, testis nullus," or, as the jurist Loysel said, "The voice of one is the voice of none." This rule of Hebraic origin dominated the whole procedure of the Middle Ages, and was very potent in the canon law and in the Ecclesiastical Courts of England. It was intended to be recognized in all the early statutes of wills. But, as we have seen, it miscarried by construction both in England and New York. But the present law of this state is settled, as already stated. The law of Scotland, although largely Roman in origin, is, I observe, to the same effect. Hogg v. Campbell, 2 Macp. 849.

[2, 3] But while publication and rogatio testium, or the testator's request to the attesting witnesses to attest his will, may be made to such witnesses on different occasions, and when they are separated and apart; yet both a sufficient publication and rogatio testium must be proved by each of two attesting witnesses, or the testamentary paper is not well executed. Now in this cause it is established by proponent that the testatrix never in any way asked Mr. Michels to act as a witness to her will. Nor did the testatrix acknowledge her prior signature to him. This is fatal to proponent's paper. 2 R. S. 63, § 40, subd. 4; now section 21, Decedent Estate Law; Tarrant v. Ware, 25 N. Y. 425, note; Matter of Will of Hewitt, 91 N. Y. at page 263; Neugent v. Neugent, 2 Redf. Sur. 369; Matter of Lyman, 14 Misc. Rep. 352, 360, 36 N. Y. Supp. 117; Burke v. Nolan, 1 Dem. Sur. 436. For the reasons stated the script propounded is not established to be the last will and testament of the late Mrs. Roe, and it is not entitled to probate as such. While it is true that publication in the case of a holographic testament is more easily presumed than is the case with an allographic testament, yet a presumption never overrides proof of a noncompliance with the statute. Here such noncompliance is established.

The probate sought is refused. Decree accordingly.