### ESTATE OF JOHN FUSILIER.

No. 5217 — May 12, 1873.

WILL, ATTESTATION OF.—On the execution of a will, the witnesses must in some
way, either by word or act, be informed by the testator personally or by some
one speaking for him, in his presence, that the document is his will. A mere
tacit signing by the testator with attestation by the witnesses is not enough.

Construing section, C. C., 1276.

*H. C. Newhall,* for proponent.

*C. McC. Delany,* for contestant.

A paper is offered for probate as the last will of deceased.
On the hearing, the following facts were made to appear:

Deceased and A. F. Durney were friends; Durney suggested to deceased that he have his will prepared and executed, deceased being in declining health; they accordingly
went to the office of W. W. Stow, Esq., an attorney of character and standing, and deceased, without any suggestion by
Durney, gave instructions to Mr. Stow to prepare a will, giving specific directions as to the disposition he wished to
make of his property, saying that as his present wife was
already sufficiently provided for, he wished all of his property to go to his children by a former marriage. Deceased
was of sound and disposing mind, but in ill health. Some
days thereafter, deceased called at the office of Mr. Stow.
The draft of the will was ready, and Mr. Stow read it to Mr.
Fusilier, who pronounced it correct and requested that it be
engrossed and sent to the Hibernia Bank, that he might
there execute it. Mr. Stow gave him specific directions as
to the necessary legal formalities to be observed in its execution. Mr. Stow's clerk engrossed the will according to the
draft, and took the paper to the bank and left it with Mr.
Durney for Mr. Fusilier. Mr. Durney was an officer of the
bank. By arrangement between Durney and Fusilier, Fusilier was to meet the will there. Durney and John Wintzen
were named in the will as executors. On a succeeding
morning Mr. Fusilier went to the bank and approached the
counter. Mr. Durney, and Joseph Nolan, and W. J. Conolly, clerks of the bank, were behind the counter. Mr.
Durney produced the paper, placed it on the counter before

Fusilier, and pointed out to him the place to sign; Fusilier signed at the place indicated, and Durney turned the paper to Nolan and Conolly and requested them to sign, pointing to the place; they signed as requested. Both witnesses saw Fusilier sign, and he saw them sign. Both witnesses were sworn and examined on the hearing. Nolan had no recollection that the word "will" was used by any person; did not recollect that Fusilier made any declaration or said anything of consequence; he may have made some passing remark. Conolly clearly recollected that the word "will" was not used, nor anything said by any person about the paper being a will or testament, nor was any declaration made in words by Fusilier or any other person; that no words passed between Fusilier and the witnesses about the business in hand. Conolly knew that a will was being executed, from the fact that before Fusilier came in, Durney said to him (Conolly) that Fusilier would be in to execute his will, and he wanted him (Conolly) and Nolan to witness it.

It is objected, on behalf of the widow, that there was no declaration as required by law.

By the COURT: The objection is well taken. The code provides that "the testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will." The declaration may be by words or acts, it may be done by the testator in person or by some person in his presence and by his authority; but in some way, *and at the time,* the witnesses must be informed *from the testator* that he wishes them to understand that the paper is executed as his will. In this case, there was at the time no declaration.

There is no doubt that the paper was prepared as Fusilier desired, and that he intended to execute it as his will; all parties acted in perfect good faith, and no suspicion of unfair dealing can attach to any person. But the decisions of other States under similar statutes are so conclusive upon the point that I have no discretion. It is the misfortune of the devisees that Fusilier did not carry out the instructions of his attorney.

See *Brinkerhoff* v. *Remsen*, 8 Paige, 488; *Chaffee* v. *Bap. Mis. Com.* 10 Paige, 85; *Van Hooser* v. *Van Hooser*, 1 Brad., 365; *Hunt* v. *Mortrie*, 3 Brad., 322.

Let a decree be made refusing to admit the paper to probate.