In re SMART'S WILL.

(Surrogate's Court, New York County. February, 1914.)

1. APPEAL AND ERROR (§ 174*)—PRESENTATION BELOW.

The right of the state, through the Attorney General, claiming as escheat, to contest a will in a court of probate, will not be determined where that point was not raised by counsel.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1093, 1094, 1121–1132; Dec. Dig. § 174.*]

2. WILLS (§ 289*)—ATTESTATION—PRESUMPTION OF COMPETENCY.

The attesting witnesses are presumed to be competent in absence of contrary proof.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

3. WITNESSES (§ 319*)—IMPEACHMENT—FAILURE TO CROSS-EXAMINE.

The party cannot impeach the credibility of witnesses whom he did not cross-examine, so that failure to cross-examine attesting witnesses in a probate proceeding admitted their credibility.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1087–1093; Dec. Dig. § 319.*]

4. WILLS (§ 303*)—ATTESTATION—PROOF.

Unless the evidence of attesting witnesses that they saw testator subscribe the will is contradicted by weightier evidence on the question, the fact of execution is established.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 711–723; Dec. Dig. § 303.*]

5. WILLS (§ 289*)—PROOF OF EXECUTION.

Where a will contains a full attestation clause signed by the attesting witnesses, the presumption of due execution prevails in absence of proof contradicting the attesting clause.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

6. WILLS (§ 295*)—PROOF OF EXECUTION—HANDWRITING.

Independent of statute, documents otherwise irrelevant are admissible in a probate case for comparison as to testator's handwriting

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 685–689; Dec. Dig. § 295.*]

7. COMMON LAW (§ 12*)—TESTAMENTARY COMMON LAW.

The testamentary common law, as part of the common law adopted by the Constitution, is a part of the probate law.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. § 10; Dec. Dig. § 12.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. EVIDENCE (§ 500*)—OPINION EVIDENCE—HANDWRITING.

A handwriting witness cannot be pressed to give his opinion if he states that he has no opinion and cannot give his opinion that the disputed signature is "unlike" testator's handwriting.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2290, 2291; Dec. Dig. § 500.*]

9. WILLS (§ 303*)—PROOF OF EXECUTION.

The will will be sustained as to execution by testator, where the evidence of the attesting witnesses is uncontradicted.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 711–723; Dec. Dig. § 303.*]

Application for the probate of the will of John Montgomery Smart, deceased, opposed by Hattie E. Huestis and others. Decree of probate.

Curtis, Mallet-Prevost & Colt, of New York City, for proponent.

Charles E. Simms, of New York City, for Hattie E. Huestis.

Frank W. Arnold, of New York City, for public administrator.

Scott, Upson & Newcomb, of New York City, for contestant Constance H. Baldwin.

The Attorney General (Henry Stanley Renaud, of New York City, of counsel), for the People.

FOWLER, S. The maker of the will offered for probate was lost on the high seas in the disaster to the Titanic. The place of the testator's birth is not established, but it is alleged in the petition for probate that he died without family or heirs at law or next of kin. It is shown that his last domicile or residence de facto was in this county. Mr. Attorney General appears in behalf of the state in opposition to the probate, asserting the caducary succession of the state by virtue of an escheat or under the rights of ultimate reversion vested in the state.

[1] The right of the state to contest the will of the deceased in a court of probate was not presented to me, and nothing therefore will be decided on that point. But throughout the trial I was resting under a mere impression that, unless some statute expressly permits it, the right of Mr. Attorney General to contest a will, not raising a charity, ought to depend on some proceeding in a common law court in the nature of office found, and no such proceeding was called to my attention. I am aware that sections 2616, 2617, C. C. P., require the Attorney General to be cited on some probates, and his right to contest a probate may be argued to arise by implication. But the point is, not clear, as such an implication is contrary to the course of the common law which should always be regarded in the first instance. But as no such point was raised by counsel, I am not at liberty to consider it further. I might correct my impression if the point were presented to me and the impression were found to be erroneous.

Treating the state as rectus in curia, it appears that the testamentary paper offered for probate in this proceeding was made and attested in Australia in due form of law.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[2] Mr. Attorney General did not cross-examine the attesting witnesses, and they are, in any event, presumed to be competent witnesses in law in the absence of proof to the contrary.

[3] By the omission denoted the cross-examiner is taken to admit the credibility of the attesting witnesses. He cannot impeach the credibility of those whom he failed to cross-examine. In Browne v. Dunn (6 The Reports, 67) Lord Morris stated the rule:

"In this case I am clearly of the opinion that the witnesses having given their testimony and not having been cross-examined, having deposed to a state of facts which is quite reconcilable with the rest of the case, it was impossible for the plaintiff * * * to ask any tribunal to say that these witnesses are not to be credited."

By the last expression, I take it that this judge meant that the witnesses were to be regarded thereafter as credible witnesses. The rule stated, of course, does not mean that the party failing to cross-examine is estopped from showing the issuable fact to be contrary to that stated by the witnesses. The rule is only important when the evidence on the whole case comes to be weighed.

[4] The depositions of the attesting witnesses to the will sufficiently established factum, and unless the evidence of these witnesses that they saw testator subscribe the will is contradicted by weightier evidence the decree must be for probate. ·

[5] There is also a full attestation clause signed by the attesting witnesses, and the presumption should be for the will in the absence of proof contradicting the facts then certified to by the attesting witnesses.

Let us next examine the evidence offered on this point for the state. Mr. Attorney General called to the stand acquaintances of the deceased and interrogated them as to their belief of the genuineness of the subscription by testator of the paper offered for probate. In other words, the state traversed one point only of the petition for probate, the subscription of the testamentary paper by the testator. In the face of the testimony of the attesting witnesses who deposed that they saw the testator subscribe the will, the evidence to the contrary on the part of the state should be very clear and weighty in order to prevail.

[6] For the purpose of comparison, Mr. Attorney General offered documents, conceded to be genuine, written by the deceased. This was proper enough. It was always the law in this court, and quite independent of statute, that documents otherwise irrelevant to a probate cause could be introduced for the purpose of comparison of hands. This court never was bound on that point by the contrary rule of the other courts.

[7] The testamentary common law as part of the common law in force in the province of New York was continued in force by the first Constitution of the state, since several times readopted and confirmed by amended constitutions. Chancellor Kent's decision in relation to the continuance of the old equity jurisprudence as part of the common law, adopted by the Constitution, covers that point. Manning v. Manning, 1 Johns. Ch. at pages 529, 530, 531. It would be flying in the face of all principle to exclude the testamentary common law. Manning v. Manning was perhaps the most important cause ever decided

by Chancellor Kent, for it fixed the boundaries of equity jurisdiction in this country. Why should the Constitution be taken to have adopted the old rules of chancery as part of the common law of the state and to have rejected the old testamentary law, always admitted to be part of the common law and placed solely·on that foundation after the reign of Henry VIII? It would be difficult to give a reason.

The comparison of handwritings by documents extraneous to the cause was always allowable by the common testamentary law, and very long before the late statute permitting it, Oughton, in the "Ordo Judiciorum in foro Britannico et Hibernico, De Causis Testamentariis," Titulus CCXXV, "De comparatione literarum," discloses the testamentary common law on this point with his usual precision and accuracy. Oughton says:

"Tamen si pars habuerit alia scripta, quamvis omnino impertinentia ad causam institutam, sub manu testatoris * * * tunc procurator illa scripta exhibebit in subsidium probationis contentorum," etc.

For many centuries afterwards this continued, indeed permanently, to be the rule in the courts of probate in England. Beaumont v. Perkins, 1 Phil. 78; Saphe v. Atkinson, 1 Add. 215, 216. These last decisions are subsequent to the erection of our state government. While our Court of Appeals has accorded an unusual authenticity and influence to the decisions of the Ecclesiastical Courts of England rendered even after our independence (because the decrees of such courts operate in rem), yet to avoid all doubts I have cited Oughton at some length, as under Chancellor Kent's accepted interpretation a rule of the testamentary common law prior to independence remains law in the absence of statute or contrary modern authority. But I will not pursue farther this principle as the modern statute now confirms it for all the courts of the state. Section 961d, C. C. P.

[8] Mr. Attorney General called to the stand two nonexpert witnesses familiar with the testator's handwriting. The testimony of one of them, Mr. Carter, was inadequate. He did not depose that the subscription to the will was not that of testator. Mr. Carter simply said it did not look like Mr. Smart's signature, but the witness was unwilling to swear that it was not Mr. Smart's signature. Such evidence amounts to nothing. While the law permits a witness to handwriting to give his opinion under oath, he cannot be pressed to do so where he states that he has no opinion. Nor can the witness give his opinion that a disputed signature was unlike the handwriting of the testator (Taylor on Ev. § 1868; Eagleton v. Kingston, 8 Ves. 476), for that is not proper opinion evidence. A signature may be very unlike the testator's handwriting and yet be the signature of testator. The testimony of the contestant's next witness to handwriting was adequate and positive. She stated that in her opinion the subscription to the will was not Mr. Smart's. But proponent in rebuttal contradicted this last witness by evidence of the same character to the contrary and of even greater weight. Thus it is that the opinion evidence adduced is actually in favor of proponent, while the evidence of the attesting witnesses stands uncontradicted.

[9] It has for ages past been the rule in courts of this character that where the evidence of the attesting witnesses stands uncontradicted the will must prevail:

"Similiter etiam, si duo testes deposuerint quod testator, in eorum præsentiis, fassus est, se condidisse testamentum valebit hujusmodi testamentum." Oughton, Ordo Judiciorum, Titulus CCXXVI.

I have cited the text of Oughton, a very old work of high authority in probate courts, for the purpose of demonstrating the continuity of probate law on points of this character. In like courts of other countries Oughton is often quoted at length, and there is no reason that he should not be quoted in this court. The testamentary common law of all modern law rests on the firmest and most ancient foundations.

For all the reasons stated, the decree will be for probate. Settle decree accordingly.